UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN CARLOS ANDINO
GONZALEZ,

      Plaintiff,

v.                           Case No.: 2:25-cv-01176-SPC-NPM

KRISTI NOEM *et al.*,

      Defendants,

## **OPINION AND ORDER**

Before the Court are petitioner Juan Carlos Andino Gonzalez's Verified Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 8), and Andino Gonzalez's reply (Doc. 9). For the below reasons, the Court grants the petition.

**A. Background**

Andino Gonzalez is a native of Cuba who entered the United States as a child in 1965. He has six U.S. citizen children, eighteen U.S. citizen grandchildren, and two U.S. citizen great-grandchildren. Andino Gonzalez was convicted of a drug offense in 1988 or 1989. He completed his criminal sentence on December 7, 2005, when he was discharged from supervision, and his criminal record has remained clean since. On January 23, 2001, an immigration judge ordered Andino Gonzalez removed to Cuba. Immigration and Customs Enforcement ("ICE") released him from custody later that year

under an order of supervision. Since then, Andino Gonzalez has fully complied with the terms of his supervision order.

On November 14, 2025, Andino Gonzalez reported to an ICE facility as required by the order of supervision. ICE revoked his release and re-detained him. The Notice of Revocation of Release indicates the assistant field office director of the Miami ICE office found it appropriate to enforce the removal order. (Doc. 8-3). But Andino Gonzalez has received no information suggesting the Cuban government will allow his repatriation. Andino Gonzalez challenges the legality of his detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and he argues ICE did not follow proper procedures when revoking his release.

### B. Jurisdiction

Before addressing the merits of Andino Gonzalez's claim, the Court must address its jurisdiction. The respondents argue two sections of the Immigration and Nationality Act ("INA") strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings,

>     adjudicate cases, or execute removal orders against any
>     alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders."  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.").  "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Andino Gonzalez does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Andino Gonzalez challenges the legality of his detention under a framework devised by the Supreme Court for federal-court review. *See Zadvydas*, 533 U.S. at 682 (stating the application of the time limitation applied by the Court "is subject to federal-court review."). A decision in Andino Gonzalez's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

### C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id*. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id*. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id*.

The respondents argue Andino Gonzalez's petition is premature because he has not been detained for longer than six months. Their argument assumes the six-month clock started on November 14, 2025, when Andino Gonzalez's current detention began. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every six months. As the

Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents argue the spirit of *Zadvydas* is to prevent prolonged detention. That is not quite right. The *Zadvydas* framework explicitly guards against *indefinite* detention. 533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens…would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation"). If the government can establish a significant likelihood of removal in the reasonably foreseeable future, post-removal detention—even prolonged detention—is lawful. Otherwise, the government can keep tabs on the noncitizen through reasonable conditions of supervision while it continues removal efforts. If removal becomes likely, the government can detain the noncitizen while it irons out the details.

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Andino Gonzalez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE presumably made that determination when it released Andino Gonzalez in

2001, without executing the removal order. There is no indication Cuba will accept Andino Gonzalez 25 years later, and the government has not identified a third country for removal. The respondents make no attempt at rebuttal.

### D. Conclusion

The Court finds no significant likelihood Andino Gonzalez will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*, but he remains subject to the terms of the order of supervision. Andino Gonzalez's claims regarding the process used to revoke release are moot. Accordingly, it is hereby

**ORDERED:**

Juan Carlos Andino Gonzalez's Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Andino Gonzalez within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on January 7, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1